1    **WO**

2

3

4

5

6                      **UNITED STATES DISTRICT COURT**

7                           **DISTRICT OF ARIZONA**

8

9    Kini M. Seawright; *et al.*,

10                                                    No. CV 11-1304-PHX-JAT

11                 Plaintiff,

                                                      **ORDER**
12

13   v.

14

15   State of Arizona; *et al.*,

16

17                 Defendants.

18

19

20          Pending before the Court is Defendants' Motion to Dismiss certain claims by

21   Plaintiffs.  (Doc. 63).  Plaintiffs have filed a Response (Doc. 68), and Defendants have

22   filed a Reply (Doc. 69).

23   **I.     BACKGROUND**

24          On November 24, 2009, Dana Seawright ("Dana") was committed to the Arizona

25   Department of Corrections ("ADOC") to serve a twelve year sentence related to various

26   felony charges.  (Doc. 63 at 2).  On July 2, 2010, Dana was housed at the Stiner Unit on

27   Housing Unit 2-F Run, at Arizona State Prison Complex-Lewis (ASPC-Lewis).  (*Id.*)  On

28   that day, gang leaders at ASPC-Lewis ordered Dana to seriously harm another inmate at

1    ASPC-Lewis and Dana refused to comply with the order.  (Doc. 53 at 4).

2         On July 3, 2010, Dana was moved to Housing Unit 2-D Run.  (*Id*.)  In apparent
3    retaliation for refusing gang leader's orders, on the morning of July 3, 2010, at some
4    point between 07:22 and 07:56 a.m., Dana was beaten and stabbed by fellow inmates and
5    left in his cell.  (*Id*. at 5-6).  The housing unit where Dana was housed and where he was
6    beaten was unsupervised during this time period.  (*Id*.)  An officer found Dana in his bed,
7    unconscious, lying face down and bleeding at 07:56 a.m.  (*Id*. at 6).  At approximately
8    08:06 a.m., Dana received medical attention for the first time.  (*Id*. at 8).  Buckeye,
9    Arizona, Paramedics were called to the scene and made the determination that Dana
10   needed to be transported via helicopter to St. Joseph's Hospital in Phoenix, a Level 1
11   Trauma Unit.  (*Id*).  At 10:00 a.m., Dana was admitted to St. Joseph's Hospital.  (*Id*.)
12   Dana never regained consciousness following the beating.  (*Id*.)  On July 7, 2010, Dana
13   was removed from life support systems and died.  (*Id*. at 9).  The cause of death was
14   blunt force trauma to Dana's head.  (*Id*.)

15        Plaintiffs are the Estate of Dana Seawright (the "Estate") and Kini Seawright.
16   Kini Seawright is the mother of Dana.  Plaintiffs originally filed a complaint on June 30,
17   2011. (Doc. 1).  On October 12, 2011, Plaintiffs filed a First Amended Complaint.  (Doc.
18   19).  On June 18, 2012, Plaintiffs filed the Second Amended Complaint at issue.  (Doc.
19   53).   Plaintiffs' Second Amended Complaint (the "Complaint") brought this action
20   against various Defendants including, the State of Arizona, Charles L. Ryan, the Director
21   of the ADOC, and individual Corrections Officers that were on duty in Housing Unit 2-D
22   Run when Dana was beaten.  (*Id*. at 1).  In the Complaint, Plaintiffs allege five counts
23   against Defendants.  (*Id*. at 9-22).  Defendants filed the pending Motion to Dismiss on
24   August 7, 2012.  (Doc. 63).

25   **II.    DISCUSSION**

26        In Defendants' Motion to Dismiss, Defendant Charles L. Ryan ("Ryan") has
27   moved to dismiss Plaintiffs' claims against him in the Complaint under Federal Rule of
28   Civil Procedure 12(b), for failure to sufficiently plead a cause of action against Ryan.

- 2 -

1   (Doc. 63 at 1).  Additionally, Defendants have moved to dismiss Plaintiffs' claims for

2   punitive damages for state law claims, Plaintiffs' claims for pain and suffering under 42

3   U.S.C. § 1983 ("§ 1983"), the Estate's claim for tort or statutory damages, and the

4   Estate's ability to maintain any claims due to lack of representation.  (*Id*. at 11-15).

5       The Court may dismiss a complaint for failure to state a claim under Federal Rule

6   of Civil Procedure 12(b)(6) for two reasons: 1) lack of a cognizable legal theory and 2)

7   insufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police*

8   *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

9       To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet

10  the requirements of Federal Rule of Civil Procedure 8(a)(2).  Rule 8(a)(2) requires a

11  "short and plain statement of the claim showing that the pleader is entitled to relief," so

12  that the defendant has "fair notice of what the . . . claim is and the grounds upon which it

13  rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v.*

14  *Gibson*, 355 U.S. 41, 47 (1957)).

15      Although a complaint attacked for failure to state a claim does not need detailed

16  factual allegations, the pleader's obligation to provide the grounds for relief requires

17  "more than labels and conclusions, and a formulaic recitation of the elements of a cause

18  of action will not do."  *Twombly*, 550 U.S. at 555 (internal citations omitted).  The factual

19  allegations of the complaint must be sufficient to raise a right to relief above a

20  speculative level.  *Id*.  Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion,

21  of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see

22  how a claimant could satisfy the requirement of providing not only 'fair notice' of the

23  nature of the claim, but also 'grounds' on which the claim rests."  *Id*. (citing 5 C. Wright

24  & A. Miller, Federal Practice and Procedure §1202, pp. 94-95 (3d ed. 2004)).

25      Rule 8's pleading standard demands more than "an unadorned, the defendant-

26  unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing

27  *Twombly*, 550 U.S. at 555).  A complaint that offers nothing more than naked assertions

28  will not suffice.  To survive a motion to dismiss, a complaint must contain sufficient

1    factual matter, which, if accepted as true, states a claim to relief that is "plausible on its

2    face." *Iqbal*, 556 U.S. at 678.   Facial plausibility exists if the pleader pleads factual

3    content that allows the court to draw the reasonable inference that the defendant is liable

4    for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility

5    requires more than a sheer possibility that a defendant acted unlawfully. *Id*. "Where a

6    complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops

7    short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (citing

8    *Twombly*, 550 U.S. at 557).

9        In deciding a motion to dismiss under Rule 12(b)(6), a court must construe the

10   facts alleged in the complaint in the light most favorable to the drafter of the complaint

11   and the court must accept all well-pleaded factual allegations as true. *See Shwarz v.*

12   *United States*, 234 F.3d 428, 435 (9th Cir. 2000).   Nonetheless, courts do not have to

13   accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478

14   U.S. 265, 286 (1986).

15       **A.     Representation for the Estate**

16       The Court initially addresses Defendants' motion to dismiss the Estate's claims

17   because no personal representative for the Estate has been appointed.   Defendants argue

18   that Plaintiffs' Second Amended Complaint should be dismissed because Kini Seawright

19   has not been appointed the personal representative for the Estate and therefore cannot

20   maintain any claims on behalf of the Estate.   (Doc. 63 at 11).   In their Response,

21   Plaintiffs argued that Kini Seawright would soon be formally appointed as a personal

22   representative of the Estate, and requests the Court allow the Estate to move forward with

23   its claims.  (Doc. 68 at 5).   In their Reply, Defendants stated that if Kini Seawright was

24   properly appointed as the personal representative then Defendants would withdraw this

25   argument from their Motion to Dismiss.  (Doc. 69 at 8).

26       On November 6, 2012, Plaintiffs filed a Notice of Appointment with the Court

27   showing that Kini Seawright had been appointed the personal representative of the Estate

28   by the Maricopa County Superior Court.  (Doc. 70).   Accordingly, the Court denies this

1  part of Defendants' Motion to Dismiss because it is moot.

2  **B.  § 1983 Claims Against Defendant Ryan**

3  Next Defendants argue that the Court should dismiss the two claims against Ryan.

4  (Doc. 63 at 4).  Plaintiffs have made two § 1983 claims against Ryan in Counts One and

5  Two of the Complaint.  (Doc. 53 at 9, 12).  Section 1983 is not a source of substantive

6  rights on its own.  *Graham v. Connor*, 490 U.S. 386, 393 (1989).  Section 1983 "merely

7  provides 'a method for vindicating federal rights elsewhere conferred.'"  *Id*. at 394

8  (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)).  "To make out a cause of

9  action under section 1983, plaintiffs must plead that (1) the defendants acting under color

10  of state law (2) deprived plaintiffs of rights secured by the Constitution or federal

11  statutes."  *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986) (citing *Smith v.*

12  *Cremins*, 308 F.2d 187, 190 (9th Cir. 1962)).  "The first inquiry in any § 1983 suit" is "to

13  isolate the precise constitutional violation with which [the defendant] is charged."  *Baker*,

14  443 U.S. at 140.

15  **1.  Count One**

16  Count One alleges all individual Defendants, including Ryan, violated § 1983 by

17  depriving Dana of his Constitutional rights under the Fourth and Eighth Amendments by

18  deliberate indifference to Dana's health, safety, and medical needs through their policies,

19  practices, and procedures.  (Doc. 53 at 9-12).  Plaintiffs have fulfilled their first

20  requirement for a § 1983 claim against Ryan by alleging that Ryan was acting under the

21  color of state law as the Director of ADOC.  (Doc. 53 at 2, 9).

22  The Court must now determine if Plaintiffs have alleged enough "factual matter"

23  to show that Ryan "plausibly" deprived Dana of his Constitutional rights guaranteed by

24  the Fourth and Eighth Amendments.  *See Iqbal*, 556 U.S. at 678.  Plaintiffs argue that

25  Dana had the right to be free from cruel and unusual punishment and free from excessive

26  force by or authorized by police officers.  (Doc. 53 at 11 ¶ 61).  The Eighth Amendment

27  protects against cruel and unusual punishment.  *See* U.S. Const. amend. VIII.  The Fourth

28  Amendment protects arrestees and pretrial detainees against the use of excessive force by

1   or authorized by police officers.  *See Graham*, 490 U.S. at 395.

2         In *Graham v. Conner*, the Supreme Court established a timeline, from prior to

3   arrest through conviction, for the proper constitutional analysis of claims of excessive

4   force.  *Id*. at 395 n. 10.  "After conviction, the Eighth Amendment 'serves as the primary

5   source of substantive protection . . . in cases . . . where the deliberate use of force is

6   challenged as excessive and unjustified.'"  *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312,

7   327 (1986)).

8         Dana was neither an arrestee nor a pretrial detainee at the time of the allegations

9   in Counts One.  Dana's claims arose after his conviction.  Consequently, the Court must

10   dismiss Plaintiffs' Fourth Amendment claim in Count One for failure to state a claim

11   upon which relief can be granted.

12         Turning to Plaintiffs' other claims in Count One, "the treatment a prisoner

13   receives in prison and the conditions under which he is confined are subject to scrutiny

14   under the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (citing

15   *Helling v. McKinney*, 509 U.S. 25, 31 (1993)).  The Eighth Amendment imposes "duties

16   on [prison] officials, who must provide humane conditions of confinement; prison

17   officials must ensure that inmates receive adequate food, clothing, shelter, and medical

18   care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  *Id*.

19   (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)).  "In particular, as the lower

20   courts have uniformly held, and as we have assumed, 'prison officials have a duty . . . to

21   protect prisoners from violence at the hands of other prisoners.'"  *Id*. (quoting *Cortes–*

22   *Quinones v. Jimenez–Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988), cert. denied, 488

23   U.S. 823 (1988)).

24           It is not, however, every injury suffered by one prisoner at
the hands of another that translates into constitutional liability

25   for prison officials responsible for the victim's safety.  Our
cases have held that a prison official violates the Eighth

26   Amendment only when two requirements are met.  First, the

27   deprivation alleged must be, objectively, sufficiently serious, a

28   prison official's act or omission must result in the denial of the

1
2
3

> minimal civilized measure of life's necessities.  For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

4
5
6
7
8

> The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.  To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind.  In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety.

9  *Id.* at 834 (internal quotations and citations omitted).

10  Accordingly, Plaintiffs must objectively show that Ryan's actions deprived Dana

11  of something "sufficiently serious."  *See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th

12  Cir. 2010) (quoting *Farmer*, 511 U.S. at 834).  The facts clearly show Dana was killed by

13  a savage attack at the hands of other inmates.  Plaintiffs allege this was the result of

14  Ryan's actions.  (Doc. 53 at 11).  The Court finds this more than qualifies as sufficiently

15  serious.

16  Plaintiffs, however, must "make a subjective showing that the deprivation

17  occurred with deliberate indifference to [Dana's] health or safety."  *Thomas*, 611 F.3d at

18  1150 (quoting *Foster v. Runnels*, 554 F.3d 807 (9th Cir. 2009).  This subjective showing

19  is done by proving Ryan had the requisite culpable state of mind.  As the *Farmer* Court

20  explained, that state of mind is proven by showing Ryan was deliberately indifferent to

21  Dana's health and safety.

22  Plaintiffs have made the claim that Ryan was deliberately indifferent to Dana's

23  safety.  (Doc. 53 at 9).  But Plaintiffs must give "more than labels and conclusions."

24  *Twombly*, 550 U.S. at 555.  In *Farmer*, the Supreme Court established a test for deliberate

25  indifference in order to determine if a prison official had violated an inmate's rights

26  under the Eighth Amendment.  The Supreme Court explained that,

27
28

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of

> confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837.

In applying this explanation from *Farmer*, the Ninth Circuit Court of Appeals has employed a two part inquiry to determine deliberate indifference. As the Court of Appeals explained,

> First, the inmate must show that the prison officials were aware of a "substantial risk of serious harm" to an inmate's health or safety. *Farmer*, 511 U.S. at 837. This part of our inquiry may be satisfied if the inmate shows that the risk posed by the deprivation is obvious. *See id.* at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk [to a prisoner's health] from the very fact that the risk was obvious."). Second, the inmate must show that the prison officials had no "reasonable" justification for the deprivation, in spite of that risk. *See id.* at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably.").

*Thomas*, 611 F.3d at 1150-51 (footnotes omitted). Consequently, the Court looks to whether Plaintiffs alleged facts to show Ryan was subjectively aware of the substantial risk of serious harm to Dana on the morning of July 3, 2010. If Ryan was aware of the substantial risk, the Court will then look to whether Ryan had a reasonable justification for not acting to mitigate that risk.

Defendants argue that Plaintiffs' Second Amended Complaint alleges no facts that address any issues concerning Ryan's deliberate indifference to inmate on inmate violence. (Doc. 63 at 5). Plaintiffs devote one sentence in their Response to showing *how* their Second Amended Complaint alleges facts that Ryan was deliberately

1    indifferent.  Plaintiffs merely state, the "Second Amended Complaint alleges seven pages

2    and fifty (50) paragraphs solely devoted to *specific allegations of Ryan's knowledge of an*

3    *deliberate indifference to the unconstitutional acts committed by his staff against ASPC*

4    *inmates*."  (Doc. 68 at 3) (emphasis in original).  The rest of Plaintiffs' Response to this

5    issue is devoted to proving that deliberate indifference is the test to determine if a

6    supervisor is liable for violating the Constitutional rights of an inmate.  (*Id*. at 3-5).  On

7    this point the Court agrees with Plaintiffs—deliberate indifference is the test.  The central

8    question, however, is how deliberate indifference is determined and whether the

9    allegations against Ryan fulfill this determination.

10           The Supreme Court and the Ninth Circuit Court of Appeals clearly explained how

11   deliberate indifference is determined in *Farmer* and *Thomas*.  Consequently, the Court is

12   left to cull Plaintiffs' "seven pages and fifty (50) paragraphs" of allegations to determine

13   if Plaintiffs have shown Ryan was aware of the substantial risk of serious harm to Dana.

14   Plaintiffs "may establish [Ryan's] awareness by reliance on any relevant evidence."

15   *Farmer*, 511 U.S. at 848.  But, Plaintiffs must demonstrate that Ryan was plausibly aware

16   of a substantial risk to Dana and not just possibly aware.

17           Viewing the allegations in the light most favorable to Plaintiffs, Plaintiffs fail to

18   state a single fact establishing that Ryan was aware of a substantial risk of serious harm

19   to Dana on the morning of July 3, 2010.  Plaintiffs' statement of facts begins on page 4 of

20   the Second Amended Complaint.  Allegations 20-57 are pertinent to all Plaintiffs' claims

21   for relief.  (Doc. 53 at 4).  Not a single one of these allegations mentions Ryan or could

22   be construed to imply that Ryan was aware of what was happening at ASPC-Lewis.  Nor

23   do any of these allegations show that Ryan's actions or deprivations made substantial

24   risks of serious harm to Dana obvious to Ryan.

25           Plaintiffs include Ryan in Count One of their claims for relief.  (*Id*. at 9).

26   Allegations 58-69 support Count One.  However, the allegations that concern Ryan here

27   are nothing more than a series of conclusory statements and repeated accusations against

28   him.  Even the parts that mention Ryan by name, allegations 60, 63, 64, 65, and 68, are

1    conclusions couched as factual allegations with respect to Ryan.  By way of example,

2    Plaintiffs' allegations include statements like, "all individual Defendants herein, . . .

3    RYAN, . . . demonstrated deliberate indifference . . . through their policies, practices, and

4    procedures, including," "[k]nowing in advance of the planned 'beat down,'" and

5    "[f]ailing to properly train COs . . ." (*Id*. at 9-10 ¶ 60).  Further, Plaintiffs claim, "official

6    policies, procedures, longstanding customs and practices of Defendants RYAN . . . ,

7    evinced a deliberate indifference to constitutional rights.   This indifference was

8    manifested by the failure to change, correct, or revoke or rescind said policies,

9    procedures, customs and practices before DANA was beaten and left for dead." (*Id*. at 12

10   ¶ 68).  These are conclusions.  These are not specific facts that sufficiently allege that

11   Ryan plausibly deprived Dana of his constitutional rights.

12        Plaintiffs allege three different times, in allegations 60, 62, and 67, that

13   Defendants knew the beating was going to take place and allowed it to happen but make

14   no allegation that Ryan himself knew, who told him, or how he came by the information.

15   None of these allegations can be reasonably intended to imply that Ryan, himself,

16   actually knew the beating was going to take place.  Further, these allegations against

17   Ryan, that he knew of the beat down, are clearly contradicted by allegation 22, where

18   Plaintiffs state *only* "ADC Corrections Officers and their supervisor working in the Stiner

19   Unit . . . were informed and knew that Dana was going to get a 'beat-down' the morning

20   of July 3, 2010." (*Id*. at 4 ¶ 22).  There is no mention of Ryan in this factual allegation.

21        Plaintiffs do allege that Defendants, including Ryan were deliberately indifferent

22   for failing to adequately staff all housing units and collapsing the units.  (*Id*. at 10 ¶ 60).

23   Plaintiffs, however, have not shown that Ryan knew of this deprivation or that a

24   substantial risk of serious harm was or should have been obvious to Ryan by this

25   deprivation.  These deficiencies are indicative of the rest of the allegations Plaintiffs

26   made in Count One.

27        Given the totality of the allegations in Count One, Plaintiffs have not made the

28   first claim for relief against Ryan, that he violated Dana's Eighth Amendment rights,

1    plausible on its face. Therefore, the Court dismisses Count One against Ryan.

2            **2.**      **Count Two**

3       Count Two alleges Ryan, among other supervisors, violated § 1983 by breaching

4 his duty of "Supervisor Responsibility" and violating the rights of inmates under his care,

5 guaranteed by the Fourth and Fourteenth Amendments. (Doc. 53 at 12-19). Plaintiffs

6 allege Ryan acted with deliberate indifference to the health and safety of inmates at all

7 the jails he supervised in violation of their constitutional rights. (*Id*. at 13). Count Two is

8 expressly based on Ryan's alleged violation of inmates' rights secured by the Fourth and

9 Fourteenth Amendments. (Doc. 53 at 13 ¶ 71).

10       Plaintiffs have not explained what part of the Fourth Amendment Ryan has

11 allegedly violated in Count Two. In analyzing Plaintiffs' claim, the only possible

12 application of the Fourth Amendment the Court sees is the protection against the use of

13 excessive force by or authorized by police officers, the same claim Plaintiffs made in

14 Count One. "In addressing an excessive force claim brought under § 1983, analysis

15 begins by identifying the specific constitutional right allegedly infringed by the

16 challenged application of force." *Graham*, 490 U.S. at 394 (citing *Baker*, 443 U.S. at

17 140). However, as the Court explained, this Fourth Amendment protection is for free

18 citizens in the process of arrest from the excessive use of force by government actors.

19 *See id*. at 395 n. 10. Dana and the inmates at the center of Plaintiffs' claim in Count Two

20 were not free citizens when the allegations occurred, they were incarcerated. "Since

21 [neither Dana nor the inmates were] pre-trial detainee[s] at the time, Plaintiffs cannot

22 assert a Fourth Amendment claim, rather, it is the Eighth Amendment that is implicated

23 in excessive force claims by a convicted prisoner." *Dennis v. Thurman*, 959 F. Supp.

24 1253, 1264 n. 1 (C.D. Cal. 1997) (citing *Graham*, 490 U.S. at 393-95 n. 10). Plaintiffs

25 have not alleged Ryan violated the Eighth Amendment rights of inmates in Count Two.

26 Accordingly, the Court dismisses Plaintiffs' Fourth Amendment claim against Ryan in

27 Count Two for failure to state a claim upon which relief can be granted. The Court is left

28 with determining if Ryan violated the Fourteenth Amendment rights of inmates.

1        Similar to Plaintiffs' Fourth Amendment claim, Plaintiffs have not explained how

2    the Fourteenth Amendment was violated by Ryan in Count Two. The Fourteenth

3    Amendment guarantees more than a single right that the Court can automatically look to

4    in this case. Pertinent to this case, "[t]he [Supreme] Court has held that the Fourteenth

5    Amendment guarantees against infringement by the States the liberties of . . . *the Fourth*

6    *Amendment*, . . . , [and] the Eighth Amendment's prohibition of cruel and unusual

7    punishments, . . ." *Pointer v. Texas*, 380 U.S. 400, 411-12 (1965) (emphasis added). In

8    addition, the Due Process Clause of the Fourteenth Amendment guarantees additional

9    rights under substantive due process. This is where the Fourteenth Amendment protects

10    individuals from "arbitrary action of government" and conduct that "shocks the

11    conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal

12    citations omitted).

13        Plaintiffs have not explained in their Second Amended Complaint, nor in their

14    Reply, which analysis they want the Court to apply. For a § 1983 claim, the specific

15    constitutional right allegedly infringed must be identified. *See Graham*, 490 U.S. at 394

16    (citing *Baker*, 443 U.S. at 140). "Dismissal can be based on the lack of a cognizable

17    legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

18    *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (quoting *Robertson*

19    *v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-534 (9th Cir. 1984)).

20        By the wording of Count Two, where Plaintiffs state "[t]his action is brought

21    pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments . . . ," it would

22    appear that Plaintiffs are alleging Ryan violated inmate's Fourth Amendment rights

23    guaranteed by the Fourteenth Amendment. (Doc. 53 at 13 ¶ 71). If this in fact is what

24    Plaintiffs intended to plead, as explained by the Court, the Fourteenth Amendment claim

25    against Ryan should be dismissed because the Fourth Amendment does not apply to

26    Count Two.

27        If Plaintiffs intended for their claim to be under the substantive due process rights

28    guaranteed by the Fourteenth Amendment, their claim did not give Defendant fair notice

1   of what the claim was and the grounds upon which it rested.  *See Twombly*, 550 U.S. at

2   555.  This is evinced by the fact that no party addressed substantive due process claims in

3   their pleadings.

4          Consequently, the Court dismisses Plaintiffs claims against Ryan in Count Two

5   for failure to state a claim upon which relief can be granted.

6          **C.      § 1983 Claims for Pain and Suffering**

7          Related to Plaintiffs' § 1983 claims under Counts One and Two, are Plaintiffs'

8   claims to recover damages for Dana's pre-death pain and suffering.  (Doc. 53 at 22 ¶ C).

9   Defendants contend that such damages cannot be recovered by either Plaintiff under their

10   § 1983 claims.  (Doc. 63 at 12).

11          **1.      Estate's § 1983 Claims Seeking Pain and Suffering**

12          As one of the named Plaintiffs, Dana's Estate is seeking damages for Dana's pre-

13   death pain and suffering.  A different judge in this Court has thoroughly addressed this

14   very issue.  In *Gotbaum v. City of Phoenix*, 617 F.Supp.2d 878 (D. Ariz. 2008), this Court

15   put § 1983 in context and explained,

16              Section 1983 was enacted after the Civil War to remedy
                widespread violations of civil rights in the South.  The statute
17              creates a civil cause of action for any person whose federal
                rights have been deprived by a person acting under color of
18              law.  42 U.S.C. § 1983.  The statute does not, however,
                specify the remedies available to such a person, nor does it
19              address whether the cause of action survives the death of the
                injured person.  *Id*.  Congress instead has directed courts to
20              "turn to 'the common law, as modified and changed by the
                constitution and statutes of the [forum] State,' as long as these
21              are 'not inconsistent with the Constitution and laws of the
                United States.'"  *Robertson v. Wegmann*, 436 U.S. 584, 588,
22              98 S.Ct. 1991, 56 L.Ed.2d 554 (1978) (quoting 42 U.S.C. §
                1988).   Courts thus look to forum state statutes for the
23              remedies available under section 1983.  *Id*. at 589, 98 S.Ct.
                1991.  In doing so, however, courts must confirm that the
24              forum state remedies comport with the Constitution and laws
                of the United States.  "Of particular importance is whether
25              application of state law 'would be inconsistent with the federal

26

27

28

> policy underlying the cause of action under consideration'"—
> in this case, section 1983. *Id*. at 590, 98 S.Ct. 1991 (quoting
> *Johnson v. Ry. Express Agency, Inc*., 421 U.S. 454, 465, 95
> S.Ct. 1716, 44 L.Ed.2d 295 (1975)).

617 F. Supp. 2d at 882-83. The court in *Gotbaum* found Arizona's survival statute, A.R.S. § 14-3110, was the most closely analogous state law to provide a remedy for a § 1983 claim by the decedent's estate. *Id*. at 883. Arizona's survival statute bars a decedent's estate from recovering for a decedent's pain and suffering. *See* A.R.S. § 14-3110. The court was then tasked with determining whether Arizona's survival statute was consistent with the federal policy underlying § 1983 and specifically whether damages for the decedent's pre-death pain and suffering were also barred in a § 1983 claim in Arizona. The court determined that damages for pre-death pain and suffering should not be barred in a § 1983 claim. *Id*. at 885.

*Gotbaum* acknowledged that the Supreme Court and Ninth Circuit Court of Appeals have not decided the question of whether a survival statute baring recovery for the decedent's pain and suffering was consistent with the federal policy behind § 1983. *Gotbaum*, 617 F.Supp.2d at 884. However, the court in *Gotbaum* recognized that a majority of federal cases had concluded "that when a violation of federal civil rights results in death of the victim, state statutes limiting the remedies of the victim's estate and family members are not consistent with the purposes of section 1983." *Id*. (citing *Berry v. City of Muskogee*, 900 F.2d 1489, 1499-1507 (10th Cir. 1990); *Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1187-90 (7th Cir. 1985); *Jaco v. Bloechle*, 739 F.2d 239, 241-45 (6th Cir. 1984); *Gilbaugh v. Balzer*, No. Civ-99-1576-AS, 2001 WL 34041889, at *5-7 (D.Or. June 7, 2001); *Garcia v. Whitehead*, 961 F.Supp. 230, 232-33 (C.D. Cal. 1997); *Guyton v. Phillips*, 532 F.Supp. 1154, 1164-66 (N.D. Cal. 1981)).

*Gotbaum* reached the same conclusion as the majority of other federal cases and explained,

> The legislative history of section 1983 makes clear that
> "Congress intended significant recompense when a

- 14 -

1
2
3
4
5
6
7
8
9
10

constitutional violation caused the death of the victim.  The general legislative history of the 1871 act makes clear that death was among the civil rights violations that Congress intended to remedy."  *Berry*, 900 F.2d at 1501. . . . "[I]n both Houses [of Congress], statements of the supporters of [section 1983] corroborated that Congress . . . intended to give a broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). . . . The Supreme Court has noted that section 1983's "unique remedy make[s] it appropriate to accord the statute 'a sweep as broad as its language.'"  *Wilson v. Garcia*, 471 U.S. 261, 272, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (quoting *United States v. Price*, 383 U.S. 787, 801, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)), superseded by statute on other grounds, 28 U.S.C. § 1658(a).

11
12
13
14
15
16
17
18
19
20
21

Most courts have concluded that state statutes limiting civil remedies in cases where a constitutional violation has caused death to the victim simply are not consistent with the purposes of section 1983.  Courts have noted that state laws "are not suitable to carry out the full effects intended for § 1983 cases ending in death of the victim; they are deficient in some respects to punish the offenses." *Berry*, 900 F.2d at 1506.  Courts have also noted the incongruity of applying a state law that would allow recovery for pain and suffering if the victim survived the assault, but not if the victim died as a result of it. . . . Courts have also noted the ever-changing patchwork of state survival and wrongful death statutes and the fact that adopting them will result in different section 1983 remedies in different states, and differences even within a single state depending on the nature of the cases . . .

22
23
24
25
26
27

the Supreme Court has not addressed this question.  The Supreme Court did apply a state survival statute to a section 1983 claim in *Robertson*, even though the state statute eliminated the claim after the victim died for reasons unrelated to the violation of his federal rights. 436 U.S. at 590-94, 98 S.Ct. 1991.  But the Supreme Court specifically noted that its decision was narrow and did not necessarily apply to cases where the civil rights violation caused the death of the victim . . .

28

*Id.* at 884-85.  The court then concluded that, "[g]iven the broad intent of section 1983,

1    and particularly the fact that Congress sought to provide an effective remedy for

2    unconstitutional killings," the Arizona survival statute's elimination of pain and suffering

3    damages in cases where death is alleged would be contrary to the purposes of § 1983. *Id.*

4    at 885.

5          In this case, Defendants argue that Arizona's survival statute is consistent with §

6    1983's goal of awarding compensation to the party actually injured and that this Court

7    should apply the survival statute as it stands, barring the Estate's recovery for pre-death

8    pain and suffering. (Doc. 63 at 13). Defendants invite this Court to adopt the reasoning

9    used in *Venerable v. City of Sacramento*, 185 F. Supp. 2d 1128, 1133 (E.D. Cal. 2002),

10   and *Cardinal v. Bushnoff*, No. 06cv72, 2010 WL 1337489, at *2 (S.D. Cal. April 5, 2010)

11   (both courts holding that state law barring an award of pre-death pain and suffering to the

12   estate of a decedent was not inconsistent with a § 1983 claim and therefore state law

13   should be applied unchanged).

14         This Court finds the opinion in *Venerable v. City of Sacramento* both logical and

15   convincing and the Court is persuaded to agree with that opinion's conclusion. However,

16   the Court is persuaded that when faced with this question, the Ninth Circuit Court of

17   Appeals will ultimately side with the result and reasoning in *Gotbaum* and a majority of

18   other federal courts. Accordingly, to remain consistent with the intent of § 1983, Dana's

19   Estate should not be barred from recovering for Dana's pre-death pain and suffering by

20   applying A.R.S. § 14-3110. Defendants' Motion to Dismiss the Estate's § 1983 claims

21   for pain and suffering is denied.

22                 **2.      Kini Seawright's § 1983 Claims Seeking Pain and Suffering**

23         As the other named Plaintiff, Kini Seawright is also seeking damages for Dana's

24   pre-death pain and suffering on her two § 1983 claims (Counts One and Two).

25   Defendants argue that in order to bring this claim, Plaintiffs must meet the requirements

26   to prove a substantive due process violation and show that Defendants' conduct "shocks

27   the conscience." (Doc. 63 at 14). The Court grants this part of Defendants' motion to

28   dismiss. However, the Court need not and will not address Defendants' arguments

1     because they completely miss the mark and are irrelevant to why Kini Seawright cannot

2     seek damages for Dana's pre-death pain and suffering on her § 1983 claims.   Kini

3     Seawright, in her individual capacity as Dana's mother, cannot seek damages for her

4     son's pre-death pain and suffering because she must bring a wrongful death claim under §

5     1983, not a survival claim.

6          As explained in *Gotbaum*, § 1983 merely "creates a civil cause of action for any

7     person whose federal rights have been deprived by a person acting under color of law.

8     The statute does not, however, specify the remedies available to such a person, nor does it

9     address whether the cause of action survives the death of the injured person." 617 F.

10    Supp. 2d at 882 (internal citations omitted).   The remedies of a § 1983 claim and whether

11    the cause of action survives the death of the decedent come from the laws of the forum

12    state, as long as these laws are consistent with the laws of the United States and the

13    policy underlying § 1983. *Id*. at 883.

14         As discussed above, Arizona's survival statute, A.R.S. § 14-3110, is the most

15    closely analogous state law to provide a remedy for a § 1983 claim *by the decedent's*

16    *estate*.   However, the most closely analogous state law to provide a remedy for a § 1983

17    claim by the decedent's parent is Arizona's wrongful death statute, A.R.S. § 12-611.

18         A wrongful death claim and a survival claim are separate claims arising from the

19    same incident. *Barragan v. Superior Court of Pima County*, 470 P.2d 722, 724 (Ariz. Ct.

20    App. 1970) (holding that a claim under the survival statute permits recovery for the

21    wrong to the injured person, and the wrongful death statute confines recovery to the loss

22    suffered by the beneficiaries).   The survival statute provides for recovery of damages

23    sustained by the decedent from the time of injury until his death. *Id.*   The claim passes

24    from the decedent to the personal representative, and becomes an asset of the estate. *Id*.

25    The purpose of the survival statute is "to prevent the tortfeasor's liability from ceasing

26    upon the injured person's death." *Id*.   The survival statute, A.R.S. § 14-3110, does not

27    create a new claim, but rather allows the personal representative to enforce the decedent's

28    claim. *Id*.   While the survival statute explicitly bars recovery by the estate for the

1   decedent's pre-death pain and suffering, as discussed above, to do so in a § 1983 claim

2   would be inconsistent with the intent of § 1983.

3       A wrongful death claim, on the other hand, is neither a continuation of the

4   decedent's claim, nor a continuation of the survival claim under A.R.S. § 14-3110.  *Id*.  A

5   wrongful death claim compensates statutory beneficiaries for their injuries, such as loss

6   of companionship, as opposed to a survival claim which compensates the decedent's

7   estate.  *Id*.  The damages available in a wrongful death action do not include damages for

8   injury *to the decedent*, such as the decedent's pain and suffering.  "In an action for

9   wrongful death, the jury shall give such damages as it deems fair and with just reference

10  to the injury . . . to the surviving parties who may be entitled to recover."  A.R.S. § 12-

11  613.  In other words, the damages are for the injury *to the party* bringing the wrongful

12  death claim, such as a parent.

13      Consequently, the damages Kini Seawright seeks must be for injury to her, not for

14  injury to her son.  Dana's pre-death pain and suffering is an injury to him, properly

15  sought here by Dana's estate under § 1983.  Dana's mother cannot also seek damages for

16  Dana's pain and suffering on her wrongful death claim under § 1983.  Therefore,

17  Defendants' Motion to Dismiss Kini Seawright's § 1983 claims for Dana's pain and

18  suffering is granted.

19      **D.    Estate's Claim for Tort and Statutory Damages**

20      Defendants argue that the Estate's claim for tort and statutory damages should be

21  dismissed because they are not recoverable.  (Doc. 63 at 14).  The Estate demands relief

22  in the form of lost wages, income, medical expenses and all other economic losses, and

23  general damages.  (Doc. 53 at 22 ¶ B-C).  Plaintiffs concede that the "Estate does not

24  have state law/gross negligence claims to assert."  (Doc. 68 at 7).   Accordingly, the

25  Court grants Defendants' Motion to Dismiss the Estate's claims for tort and statutory

26  damages.

27      **E.    Punitive Damages for State Law Claims**

28      Defendants argue that punitive damages cannot be awarded against the State of

1  Arizona under a state law claim.  (Doc. 63 at 14-15) (citing A.R.S. § 12-820.04).

2  Plaintiffs seek punitive damages under their state law claims against the State of Arizona

3  in Counts Three, Four, and Five.  (Doc. 53 at 19-22).  Plaintiffs concede Defendants

4  argument and admit that punitive damages are not available against the State. (Doc. 68 at

5  7).  Therefore, the Court grants Defendants' Motion to Dismiss the Plaintiffs' claims for

6  punitive damages against the State of Arizona in Counts Three, Four, and Five.

7  **III.    CONCLUSION**

8        Based on the foregoing,

9        **IT IS ORDERED** Defendants' Motion to Dismiss is granted in part and denied in

10 part. (Doc. 63).  Specifically, the Court denies Defendants' motion to dismiss all § 1983

11 claims against all Defendants because no personal representative for the Estate has been

12 appointed.  The Court grants Defendants' motion to dismiss Count One and Count Two

13 against Defendant Charles L. Ryan.  The Court denies Defendants' motion to dismiss the

14 Estate's § 1983 claims for pain and suffering.  The Court grants Defendants' motion to

15 dismiss Kini Seawright's § 1983 claims for pain and suffering.  The Court grants

16 Defendants' motion to dismiss the Estate's claim for tort and statutory damages.  Finally,

17 the Court grants Defendants' motion to dismiss punitive damages against the State of

18 Arizona on Counts Three, Four, and Five.

19        Dated this 6th day of February, 2013.

20

21

22

23                                          James A. Teilborg
                                            United States District Judge

24

25

26

27

28